## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**RICHARD MOSLEY,**
        **Petitioner,**

**v.**                                                    **Case No.  5:04cv233/SPM/MD**

**JAMES V. CROSBY, JR.,**
        **Respondent.**

_____

## REPORT AND RECOMMENDATION

**Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 12).  Petitioner has filed a reply.  (Doc. 21).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY

**On March 20, 2001 petitioner was charged by amended information with one count of attempted armed robbery, two counts of kidnapping and two counts of aggravated assault in the Circuit Court of Bay County, Florida, case numbers 00-**

3023 and 00-3024.  (Doc. 12, Ex. A, p. 176).[1]  On June 5, 2001 he entered a counseled no contest plea to one count of attempted armed robbery, two counts of false imprisonment and two counts of aggravated assault, with a negotiated sentence. (Ex. A, pp. 92-93; Ex. E).  Petitioner was adjudicated guilty and sentenced to concurrent terms of 120.9 months of imprisonment on each count.  (Ex. B, pp. 203-15).  On appeal, he raised one issue: "Did the trial court conduct an adequate *Nelson* inquiry where the trial court failed to question defense counsel as to appellant's complaints and failed to make any finding or ruling as to the sufficiency of the ineffectiveness claims?"  (Ex. G).  The Florida First District Court of Appeal ("First DCA") affirmed petitioner's conviction without written opinion on November 19, 2002.  *State v. Mosley*, 833 So.2d 124 (Fla. 1st Dist. Ct. App. 2002) (Table) (*see* copy of mandate at Ex. J).

On December 19, 2002 petitioner filed a motion for postconviction relief pursuant to FLA. R. CRIM. P. 3.850, raising the following claims:

> 1.  Ineffective assistance of counsel for failing to inform defendant of the law regarding the movement or confinement of victims of a kidnapping and for misinforming defendant that if he went to trial he would have been found guilty of kidnapping.

> 2.  Ineffective assistance of counsel for misleading defendant to believe that he could appeal the denial of his motion to suppress identification even though the issue was not expressly reserved by his plea.

> 3.  Plea involuntary because based on fear that counsel would be unprepared for trial.

> 4.  Plea involuntary because counsel misadvised defendant that if he went to trial and was found guilty, he would be sentenced as an habitual offender.

> 5.  Ineffective assistance of counsel for failing to serve notice to the state of an alibi defense

(Ex. K, pp. 1-12).  Petitioner filed a supplement to his motion on April 24, 2003, in which he raised the following claims:

---

[1]Hereafter all references to exhibits will be to those attached to Doc. 12 unless otherwise noted.

     **1.   Ineffective assistance based on counsel's failure to pursue an identification defense or an alibi defense (claims 1 and 2).**

     **2.   Trial court error in failing to conduct a *Faretta* hearing after defendant moved to dismiss his court appointed counsel (claim 3).**

**(*Id.*, pp. 45-55).  The trial court denied relief in an order filed August 27, 2003.  (*Id.*, pp. 84-85).  The denial order was affirmed by the First DCA on April 8, 2004, *Mosley v. State*, 873 So.2d 328 (Fla. 1st DCA 2004) (Table), with the mandate issuing June 8, 2004.  (Ex. O).  Petitioner filed his federal habeas petition on September 10, 2004. (Doc. 1).  Respondent asserts that the petition is timely and that petitioner exhausted his state court remedies.  (Doc. 12, p. 2).**

## DISCUSSION

### Standard of Review

**Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:**

> **(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–**
>
> > **(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or**
> >
> > **(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

**28 U.S.C.A. § 2254 (2002).**

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and

nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 647, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a

context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

Within this framework, the court will review petitioner's claims.

**Petitioner's Claims**

1.    Denial of *Faretta*[2] or *Nelson*[3] Hearing (Ground 1 of Petition).

Petitioner's first claim is stated as follows: "Was denied a *Faretta*, in alternative *Nelson* hearing when filed a motion to dismiss court appoint [sic] counsel." (Doc. 1, p. 5). In support of his claim, petitioner alleges the following:

> Court appointed counsel was ineffective when representing the petitioner, in that counsel would not investigate the petitioner's alibi defense; nor file motion for *Brady* demand for the production of the videotape at the crime scene, also lied to petitioner that he would receive an habitual sentence if select to go to trial, these and other false allegations created a lawyers' client [sic] conflict.

(*Id.*). In his supporting memorandum, petitioner asserts that although the court began a hearing on petitioner's motion to dismiss counsel, the subject of the hearing was quickly diverted from the basis of petitioner's motion to whether the defense would be presenting an alibi defense. Petitioner complains that the court never made the necessary inquiries under *Nelson*, nor did the court engage in a discussion with him as to the dangers and disadvantages of proceeding without counsel to ensure that any waiver of counsel was knowing and voluntary. (Doc. 2, pp. 9-14). As a result, petitioner claims, he "was denied a right to trial with effective assistant [sic] of counsel, and a right to self-representation, along with a *Farretta* [sic] violation, which was not completely afforded to the petitioner." (*Id.*, p. 14). He

---

[2]*Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

[3]*Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973).

further asserts that "failure of the lower court to hold a proper and full inquiry denied the Petitioner his Sixth Amendment right to counsel of choice out of the public offender's [sic] office. . . ." (Doc. 21, p. 11). Petitioner raised the *Nelson* component of this issue in his direct appeal. He raised the federal constitutional aspects of this claim in his Rule 3.850 motion.

Petitioner's claim concerning the adequacy of a *Nelson* hearing may be disposed of summarily. *Nelson v. State*, 274 So.2d 256 (Fla. 4th Dist. Ct. App. 1973). *Nelson* held that in order to protect an indigent defendant's right to the effective assistance of appointed counsel, where it appears that the defendant wishes to discharge his attorney, the trial court should make an inquiry as to the reason for the request to discharge. 274 So.2d at 258. If incompetency of counsel is the reason, the court must inquire further to see if effective assistance of counsel is being rendered. *Id.* at 259. The ultimate purpose of the inquiry is to determine whether there is sufficient justification to discharge the first lawyer and appoint a second. *Id.*

Respondent contends that whether the trial court performed a proper *Nelson* inquiry is an issue of state law and provides no basis for federal habeas relief. Respondent is correct. Federal habeas relief is not available to reexamine state decisions on its own procedural rules. *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1987) (jury instruction). Moreover, even if the trial court violated the *Nelson* rule, a violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). No case has been cited for the proposition that the federal constitution mandates the *Nelson* procedure, and this court has found none. It must be concluded, as argued by respondent, that this is purely an issue of state law not cognizable in this court. The remaining components of petitioner's claim--the right to counsel of choice and the *Faretta* violation--are discussed below.

## A.  Clearly Established Federal Law

Supreme Court precedent on replacement of counsel is well settled. The Sixth Amendment protects a criminal defendant's right to counsel of choice.  *See Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) (noting that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment").  However, "unlike the right to counsel, the right to counsel of choice is not absolute."  *Miller v. Smith*, 115 F.3d 1136, 1143 (4th Cir. 1997); *see Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697 (recognizing that the "right to choose one's own counsel is circumscribed in several important respects").  Thus, a criminal defendant cannot "insist on representation by an attorney he cannot afford," *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697, because [t]he [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the court." *Caplin & Drysdale v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989); *see also Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697 (noting that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"). "Consequently, an indigent criminal defendant has no constitutional right to have a particular lawyer represent him."  *Miller v. Smith*, 115 F.3d at 1143; *see also Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) ("indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him"); *Green v. Abrams*, 984 F.2d 41, 47 (2nd Cir. 1993) ("indigent defendant has no right to choose the particular counsel appointed"); *United States v. Bradley*, 892 F.2d 634, 635 (7th Cir. 1990) (indigent criminal defendants "cannot pick and choose among members of the district court's bar").  It is only when counsel is shown to be ineffective or where there is a legal conflict of interest that counsel should be replaced.  "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial

is fair." *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

As to petitioner's reference to *Faretta*, in *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975), the Supreme Court held that the Sixth Amendment "grants to the accused personally the right to make his defense." Unlike the criminal defendant's right to counsel, which is in effect until waived, the right to self-representation is not effective until affirmatively asserted. A defendant should be permitted by a court to represent himself only when he "knowingly and intelligently" relinquishes his right to counsel and makes a "clear and unequivocal" assertion of his right to self-representation. 422 U.S. at 835, 95 S.Ct. at 2541. When a defendant indicates a desire to proceed without counsel, the court should make him "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." 422 U.S. at 835, 95 S.Ct. at 2541. Insofar as the desire to proceed *pro se* is concerned, the Eleventh Circuit has held that a "petitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made." *Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir. 1991) (quoting *Dorman v. Wainwright*, 798 F.2d 1358 (11th Cir. 1986)).

In the absence of a clear election, a court "should not quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense." *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (en banc); *see also Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1976). In evaluating an individual's desire to represent himself the trial court must "traverse . . . a thin line" between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation. *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). On collateral review, the entire record must be reviewed to determine an unequivocal demand for self-representation. *Id*. at 1291.

**B.  Federal Review of State Court Decision**

The Rule 3.850 court denied relief on petitioner's claim, finding as follows: "Defendant filed a motion to dismiss counsel and a hearing was held.  *See Transcripts 4/17/01*.  Defendant did not give specific legitimate grounds for dismissal.  Defendant stated he was not sure if he was satisfied with her services at that time or not."  (Ex. K, p. 85).  This decision was neither contrary to, nor an unreasonable application of, existing Supreme Court law on the replacement of counsel.

The state court record establishes that at the hearing on petitioner's "motion to dismiss court appointed counsel," petitioner initially advised the court that he did not feel defense counsel had sufficiently investigated his alibi defense and complained that they were having "little debates about the facts of [his] case."  (Ex. D, p. 261).  He then went on to say that after filing his motion he and counsel had had an opportunity to talk "a few times" and that he did not wish to pursue his motion at that time.  (*Id*.).[4]  At no time thereafter did petitioner seek to revisit the motion.  Based on this record, it was not objectively unreasonable for the state court to conclude that petitioner did not show that counsel was ineffective or that there was a legal conflict of interest to warrant the replacement of counsel.

Although it is unclear whether the state court addressed the *Faretta* aspect of petitioner's claim, even if this court assumes that it did not and that the decision is

---

[4]Specifically, petitioner advised:

THE DEFENDANT: "What I was trying to say is she [defense counsel] didn't do the investigation on my case as far as alibi defense, saying she filed a motion at the proper time, then I talked to her and she said she had filed some motions, um, we were going to have a hearing May 5[th].

MRS. BELLER [defense counsel]: May the 8th.

THE DEFENDANT: May the 8th. But while I was over there I get a chance to talk to her a few times about my case and she didn't, she was always having, we were always having little debates about the facts of my case so it was a whole lot of conflict, but at the present time now you can set a continuance on this motion because [of] the fact that we are still discussing about whether I am satisfied with her assistance at this present time so I was going to ask you for a continuance.

(Ex. D, p. 261).  The court responded, "That's fine."  (*Id*.).

not entitled to deference under § 2254(d), petitioner is not entitled to federal habeas relief.  As stated above, to invoke the right to self representation under *Faretta* a defendant must clearly and unequivocally assert that right.  Invocation of the right of self-representation requires that the defendant also waive his right to counsel.  Here, at no time did petitioner state that he wanted to represent himself.  Petitioner made a very different request in his motion to dismiss counsel--a new lawyer, preferably a private attorney: "Therefore the defendant ask that the court provide him with a private attorney do to this conflict, so as where Justice will be served with true equity and fairness.  Wherefore the defendant ask that the court permit the defendant to act as co-counsel until the court appoint him one relating to the above style matter."  (Ex. A, p. 178, spelling in original).  Furthermore, at no time during the in-court discussion of petitioner's motion did petitioner even hint at a desire to waive counsel and to proceed without legal representation if his request for replacement counsel was denied.  (Ex. D, pp. 260-64).  His current argument--that "[i]t is presumed that a defendant who filed a motion . . . to dismiss his court appointed counsel is exercising his right to self-representation"--is without merit.  (Doc. 21, p. 3).  Invocation of the right to self-representation must be clear and unequivocal, and petitioner's motion and behavior at the court hearing did not approach that level.  Petitioner cites no federal authority for the proposition that a trial court has an independent obligation to advise a defendant of his right to represent himself when the defendant seeks to have a new attorney appointed to represent him but makes no suggestion that he may be interested in proceeding without counsel.  Petitioner is not entitled to federal habeas relief on this claim, and the writ should not issue.

    2.  <u>Plea Involuntary Due to Ineffective Assistance of Counsel</u> (Grounds 2-4 of Petition).

        A.  Clearly Established Federal Law

    When a prisoner contends that ineffective assistance of counsel led him to enter an improvident guilty plea, courts apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)).  Under *Strickland*, in order to prevail upon a

claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for  counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052.

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

### B.  Review of State Court Decision

The state court identified *Strickland* as the controlling legal standard, and denied relief on all grounds. (Ex. K, pp. 84-85).

### i.    Misadvice Concerning Habitual Offender Status

Petitioner's first assignment of error is stated as follows: "The petitioner enter an involuntary plea do [sic] to counsel coercion that the petitioner would be given a life sentence if selected to go to trial, as an habitual offender." (Doc. 1, p. 5). In support of his claim, petitioner alleges the following:

> Doing all time that the petitioner's court appointed counsel represented the petitioner in state court, counsel propound to the petitioner, at all stages of his criminal procedures, that if he select to go to trial "he would be given a life sentence as a Habitual Offender" because he were a true candidate for the habitual offender status. Which in turn was untrue. The petitioner found out in prison that he was not a candidate.

(*Id.*) (spelling and grammatical errors in original). The state court denied relief as follows:

> In ground four Defendant alleges that counsel erroneously misadvised him that if he went to trial he would receive a habitual offender sentence. The plea and sentencing transcript clearly indicate that counsel and the state acknowledged that Defendant was not a

habitual offender.  Defendant's claim is refuted by the record.  *See Transcript 6/5/01 pg. 16.*

**(Ex. K, p. 84).**

The record reveals that on March 20, 2001 the State filed a "notice of potential habitual offender status."  (Ex. A, pp. 174-75).  At a hearing held on May 8, 2001 the parties discussed, among other things, the notice.  Petitioner's counsel stated that petitioner was advised "that he could be habitualized and he knows that."  (Ex. F, p. 269).  Later during the hearing, the court inquired as follows:

THE COURT: Okay.  Have you gotten your Notice of Habitual Offender Treatment?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand what that means?

THE DEFENDANT: Yes, ma'am.

THE COURT: What does it mean?

THE DEFENDANT: I could be habitualized.

THE COURT: Do you know what that means?  That's what I'm trying to ask you; what that is.

THE DEFENDANT: Yes, ma'am, I know what it means.

THE COURT: Well, what is it?

THE DEFENDANT: The sentence, the sentence could be double, be doubled up.

THE COURT: Okay.  That's fine.

MRS. BELLER [petitioner's counsel]: And the last offer that the State has made is for ten years in prison, no probation to follow, to run concurrent, and I've advised my client.

THE COURT: Fine, thank you. . . .

**(*Id.*, pp. 273-74).  However, as evidenced by the plea agreement and the plea and sentencing transcript, the parties acknowledged sometime prior to petitioner**

entering his plea that petitioner was not an habitual felony offender subject to an enhanced sentence under Fla. Stat. § 775.084; rather, he was subject to sentencing under the guidelines. Petitioner negotiated a recommendation of the lowest permissible sentence under the guidelines, with all of his sentences running concurrently. (Ex. E, pp. 272-81). Thus, although earlier in petitioner's case he was advised that he faced enhanced sentencing, the record amply supports the Rule 3.850 court's findings that petitioner knew at the time he elected to enter his no contest plea that he was <u>not</u> considered a habitual offender and was subject to straight guidelines sentencing. Even without the threat of an enhanced sentence, petitioner believed it to be in his best interest to enter the plea.[5] The state court's denial of relief on this ground was neither contrary to, nor an unreasonable application of, the *Strickland* standard.

ii.    <u>Plea Based On Fear That Counsel Would Be Unprepared For Trial</u>

Petitioner next contends that he involuntarily entered his plea out of fear that counsel would be unprepared for trial. Specifically, petitioner alleges that during a pre-trial conference, the court set his trial date for the following week which "forced" him to "negotiate a plea with the trial court involuntarily" because he feared that his attorney would be unprepared. In analyzing this issue, a brief history of the relevant pre-trial proceedings is helpful.

On April 17, 2001 a pre-trial was held. Defense counsel advised the court of petitioner's desire to exercise his right to go to trial. Counsel also suggested that petitioner's "motion to dismiss court appointed counsel" be addressed. (Ex. D, p.

---

[5]Petitioner twice indicated that he felt his plea was in his best interest. (Ex. E, pp. 274, 278). When asked whether there was anything he wanted to say before sentencing, petitioner responded:

THE DEFENDANT: No, no, ma'am. If you are going to reduce it [the sentence], I will say something, but other than that --

THE COURT: I don't think so. I can't get lower than the bottom. Okay?

THE DEFENDANT: That's the best I can do. It's a fifty-fifty chance on this situation, I am too old to try to go through the whole scenario of this again.

(Ex. E, p. 278).

260).  As previously discussed, petitioner mentioned his past conflict with counsel concerning an alibi defense, but indicated his desire not to pursue the motion.  The prosecutor interjected that he had not been noticed of an alibi.  (*Id.*).  The court advised petitioner that if he had any alibi witnesses he needed to inform his attorney of their names and addresses.  The court inquired of defense counsel whether she was aware of any alibi witnesses, to which counsel responded:

> MRS. BELLER [defense counsel]: No, we have discussed alibi witnesses but the problem has been the address and finding those alibi witnesses is why we haven't -- but I can potentially go ahead and provide that to [the prosecutor] so he won't be surprised but, you know, it's going to be difficult.

(*Id.*, p. 263).  Another pre-trial was set for May 8, 2001.  (*Id.*, p. 264; *see also* Ex. A, p. 187).

On April 18, 2001 the defense filed its witness list which identified two witnesses: Cookie Westinghouse in Panama City, Florida, and Brenda Livingston, "address to be provided."  (Ex. A, p. 188).

On May 8, 2001 the parties appeared for another pre-trial.  Petitioner's motion to suppress identification was denied, and a trial date was set for May 14, 2001.  (*Id.*, p. 190).  On May 14, 2001 another pre-trial was set for June 5, 2001.  (*Id.*, p. 191).

On June 5, 2001 the court inquired whether the parties were prepared to go to trial the following week.  (Ex. C, p. 245).  Defense counsel indicated she was ready; however, when the trial judge inquired of petitioner whether he understood "what's going on," petitioner responded that he was not prepared because although he had recently located and corresponded with alibi witness Brenda Livingston, he had not had an opportunity to communicate Ms. Livingston's new address to defense counsel.  Thus, he did not believe there was time to secure Ms. Livingston's attendance at trial the following week.  (*Id.*).[6]  After further questioning by the court, petitioner admitted that he had known Ms. Livingston's new address for four or five months but failed to communicate it to counsel.  He further admitted that Ms.

---

[6]Defense counsel attempted earlier to contact Ms. Livingston, but was unsuccessful because the address petitioner provided was an old one.  (Ex. C, p. 247; Ex. E, pp. 264-65).

Livingston did not want to be involved in his case, was unwilling to testify at trial, and had not provided petitioner with a telephone number even though he asked for it in correspondence. (*Id.*, pp. 247-56, Ex. E, pp. 260-68). The court directed defense counsel to write Ms. Livingston that day and request that she call defense counsel immediately so that it could be ascertained whether she had information helpful to petitioner's case. The court also directed defense counsel to advise Ms. Livingston that travel arrangements would be made and her expenses paid if she "had something to say." (*Id.*, p. 270). Defense counsel agreed to send the letter that day, one-day service. (*Id.*). Petitioner then interjected:

> THE DEFENDANT: Can I say something else?
>
> THE COURT: Yes.
>
> THE DEFENDANT: I am trying to make a negotiated plea with the Court due to the –
>
> THE COURT: You want to plead, is that what you are saying?
>
> THE DEFENDANT: Due to the case being so complex and I wanted to try to consult with her [defense counsel] still but sometimes I don't know, we are misconnecting to each other like –
>
> THE COURT: Well, if you would like to talk right now, that's fine.
>
> MRS. BELLER: We can go in the back and talk.
>
> THE DEFENDANT: Yeah, well, I wanted to have a pretrial conference with about the situation.
>
> MRS. BELLER: He wants to talk with you about it.
>
> THE COURT: Well, sir –
>
> THE DEFENDANT: It won't take no more than about five or ten minutes.
>
> THE COURT: Well, if you want to plea bargain, I am not the one to plea bargain, because it's the State Attorney that's trying it. If you want to, if you want to talk with Mrs. Beller and then if Mr. Lewis wants to sit in the room, that's his business. If he doesn't, he will let you talk to Mrs. Beller and Mrs. Beller will talk to him and she can talk to you.

MRS. BELLER: We can do that as long as it's understood that the plea negotiations, anything that comes out would be confidential, wouldn't be used at trial.

THE COURT: I don't think I want to be involved in this, but you can certainly talk to Mr. Lewis -- Mrs. Beller, you know how to do that and see.

THE DEFENDANT: I want to get it over with now, ain't no sense in me delaying the Court.

MRS. BELLER: If I could take a break, Your Honor.

THE COURT: That's fine, it's the last matter, I think.

(*Id.*, pp. 270-72). After a brief recess defense counsel advised that a plea agreement had been reached and described its terms. (*Id.*, p. 272-73). The court then personally addressed petitioner, asking him if entering the plea was what he wanted to do and whether he understood its terms. The court also inquired whether petitioner had had enough time to talk with his lawyer about his case, whether he was satisfied with counsel's services, whether he had read the plea form and understood it, and whether he felt like this plea was in his best interest under the circumstances. Petitioner answered affirmatively to each question. (*Id.*, pp. 273-74). The court further inquired whether petitioner was taking any drugs, alcohol or medication, and whether he had ever been treated for mental illness. Petitioner answered in the negative. (*Id.*, p. 276). After establishing a factual basis for the plea, the court asked petitioner whether there was anything else he wanted to say before sentencing. Petitioner responded: "That's the best I can do. It's a fifty-fifty chance on this situation, I am too old to try to go through the whole scenario of this again." (*Id.*, p. 278).

When petitioner raised this claim in his Rule 3.850 motion, the trial court denied relief as follows: "Defendant's allegations are refuted by the record and fails [sic] to meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant was the one who initiated the plea negotiations while counsel agreed to continue to try to contact the alibi witness. *See Transcripts 4/17/01 and 6/5/01*." (Ex. K, p. 84). Based on the record set forth above, the state court's conclusion that

petitioner's claim had no merit was neither contrary to, nor an unreasonable application of the *Strickland* standard.[7]

### iii.    Failure To Adequately Represent Petitioner

For his last assignment of error, petitioner provides the following facts:

> The petitioner counsel failed to prepare a defense for trial, whereas the petitioner were willing to go to trial.  It was a conflict between counsel and petitioner in presenting a identification defense, or an alibi defense, in which either could have exonerated the petitioner or set in motion a jury pardon of a lesser charge, based on the evidence.

(Doc. 1, p. 6) (grammatical errors in original).  The Rule 3.850 court addressed this issue and denied relief, finding as follows:  "Defendant alleges a conflict of interest for failure to pursue an identification defense or an alibi defense.  Counsel filed a motion to suppress identification which was denied.  Counsel tried to obtain information from Defendant to contact the alibi.  *See Transcripts 6/5/01 and 4/17/01*. . . ."  (Ex. K, p. 85).  Indeed, the record demonstrates that defense counsel pursued an identification defense by filing a motion to suppress the out-of-court and any in-court identifications of petitioner by the clerk of the Sunshine Market.  (Ex. A, pp. 184-85). The motion was denied.  (*Id.*, p. 190).  Furthermore, as just discussed defense counsel did all she could do to pursue an alibi defense up until the time petitioner decided to forego trial and enter a plea.  The weakness of petitioner's alibi defense was attributable not to error on counsel's part, but to factors outside her control--petitioner's failure to timely provide her with an updated address for Ms. Livingston, and Ms. Livingston's unwillingness to be involved in petitioner's case. Notably, petitioner stated during the plea colloquy that he was satisfied with defense counsel's services, that he was aware of his right to go to trial, that he understood he was giving up that right, and that he believed it was in his best interest to enter the plea.  (Ex. E, pp. 274, 278).  Based on the foregoing, the state court's denial of

---

[7]On the issue of defense counsel's preparedness in general, the record further establishes that defense counsel filed a demand for discovery, as evidenced by the State's responses to discovery. (Ex. A, pp. 25-25A and attachments, p. 164).  Defense counsel took depositions of witnesses, (ex. C, p. 245), filed a motion to suppress, (ex. A, pp. 185-86), met with petitioner multiple times at the jail (ex. C, p. 250), discussed the facts of petitioner's case with him (ex. D, p. 261), and discussed alibi and witness problems (ex. D, p. 263).

relief on this claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard.

Accordingly, it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1) challenging the convictions and sentences in *State of Florida v. Richard Mosley*, in the Circuit Court of Bay County, Florida, case numbers 00-3023 and 00-3024, be DENIED and the clerk be directed to close the file.

At Pensacola, Florida this 20th day of January, 2006.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**